Erica A. Maharg (Bar No. 279396)
George Torgun (Bar No. 222085)
SAN FRANCISCO BAYKEEPER
1736 Franklin St., Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: george@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>Plaintiff,<br>v.<br><br>MISSION TRAIL WASTE SYSTEMS, INC.,<br><br>Defendant. | Civil No. 5:15-cv-3465<br><br>STIPULATED REQUEST FOR ENTRY OF [PROPOSED] CONSENT DECREE AND DISMISSAL; [PROPOSED] ORDER<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br>Magistrate Judge Nathanael M. Cousins |

WHEREAS, on January 12, 2016, Plaintiff San Francisco Baykeeper ("Baykeeper") and Defendant Mission Trail Waste Systems, Inc. (collectively, the "Parties") notified the Court that the Parties had reached a tentative settlement in this action and would be sending copy of the [Proposed] Consent Decree to the U.S. Department of Justice and to the U.S. Environmental Protection Agency for a mandatory 45-day review period under 33 U.S.C. § 1365(c)(3) and 40 C.F.R. § 135.5, *see* Dkt. No. 21;

WHEREAS, on March 4, 2016, the U.S. Department of Justice notified the Court and the Parties that it did not object to the entry of the [Proposed] Consent Decree, *see* Dkt. No. 24;

WHEREFORE, the Parties hereby stipulate and request that the Court approve and enter the [Proposed] Consent Decree as an Order of the Court, order that the above-captioned action be dismissed with prejudice, and retain jurisdiction over the Parties for the sole purpose of enforcing compliance by the Parties with the terms of the Consent Decree until the Consent Decree terminates;

WHEREFORE, the Parties hereby stipulate and request that the Court vacate the Case Management Conference scheduled for March 16, 2016 and all other deadlines in this matter.

WHEREFORE, the Parties respectfully stipulate and request the Court to approve and enter the [Proposed] Order attached hereto.

Dated:  March 8, 2016                                   Respectfully Submitted,

SAN FRANCISCO BAYKEEPER


/s/ Erica A. Maharg
_____
Erica A. Maharg
Attorney for Plaintiff
SAN FRANCISCO BAYKEEPER


BRADY & VINDING


/s/ Michael V. Brady
_____
Michael V. Brady
Attorneys for Defendant
MISSION TRAIL WASTE SYSTEMS, INC

1

[~~PROPOSED~~] ORDER

IT IS HEREBY ORDERED that the [~~Proposed~~] Consent Decree, attached hereto as Exhibit A,
is fully incorporated herein by reference and is entered as an Order of the Court.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over the Parties for the
sole purpose of enforcing compliance by the Plaintiff and Defendant with the terms of the Consent
Decree until the Consent Decree terminates.

IT IS FURTHER ORDERED that the Case Management Conference scheduled for March 16,
2016 at 10:00 AM and all other deadlines in this matter are vacated.

IT IS FURTHER ORDERED that the above-captioned action against Defendant is dismissed
with prejudice.

IT IS SO ORDERED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Date: _____March 8, 2016_____

_____
Magistrate Judge Nathanael M. Cousins



STIPULATED ENTRY OF [~~PROPOSED~~] CONSENT DECREE, Case No. 5:15-cv-3465

# EXHIBIT A

Erica A. Maharg (Bar No. 279396)
George Torgun (Bar No. 222085)
SAN FRANCISCO BAYKEEPER
1736 Franklin St., Suite 800
Oakland, California 94612
Telephone: (510) 735-9700
Facsimile: (510) 735-9160
Email: erica@baykeeper.org
Email: george@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>           Plaintiff,<br>     v.<br><br>MISSION TRAIL WASTE SYSTEMS, INC.,<br><br>           Defendant. | Civil No. 5:15-cv-3465<br><br>[~~PROPOSED~~] CONSENT DECREE<br><br>(Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.*)<br><br>Magistrate Judge Nathanael M. Cousins |

### CONSENT DECREE

WHEREAS, San Francisco Baykeeper, Inc. ("Baykeeper") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the San Francisco Bay and other area waters;

WHEREAS, Mission Trail Waste Systems, Inc. ("Mission Trail") operates a material recovery facility, located at 1060 Richard Avenue, Santa Clara, California (the "Facility");

WHEREAS, Baykeeper and Mission Trail are collectively referred to herein as the "Parties";

WHEREAS, stormwater discharges associated with industrial activity at the Facility are regulated pursuant to the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-57-DWQ, issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. § 1342 (hereinafter, "Industrial Stormwater Permit").  These industrial activities include, *inter alia*, accepting and sorting recyclables and waste materials for disposal off-site and conducting vehicle and equipment maintenance;

WHEREAS, the Industrial Stormwater Permit includes the following requirements for all permittees, including Mission Trail: (1) develop and implement a stormwater pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as appropriate, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants, (3) implement BAT and BCT through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, and, (4) when necessary, implement additional BMPs to prevent or reduce any pollutants that are causing or contributing to any exceedance of water quality standards;

WHEREAS, on May 19, 2015, Baykeeper served Mission Trail, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Officer of the Regional Water Quality Control Board, San Francisco Bay Region ("Regional Water Board"), and the Regional Administrator of EPA Region IX, with a notice of intent to file suit ("60-Day Notice") under Section 505(b)(1)(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "the Act"), 33 U.S.C. § 1365(b)(1)(A),

alleging violations of the Act and the previous iterations of the Industrial Stormwater Permit, Water Quality Order No. 92-12-DWQ (as amended by Water Quality Order 97-03-DWQ), at the Facility;

WHEREAS, on July 28, 2015, Baykeeper filed a complaint ("Complaint") alleging certain violations of the Act and the Industrial Stormwater Permit at the Facility;

WHEREAS, Mission Trail denies all allegations and claims contained in the Complaint and reserves all rights and defenses with respect to such allegations and claims;

WHEREAS, the Parties believe it is in their mutual interest and choose to resolve in full Baykeeper's allegations in the 60-Day Notice and Complaint through settlement and avoid the cost and uncertainties of further litigation;

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

## I.    BEST MANAGEMENT PRACTICES

1.    In order to further reduce or further prevent pollutants associated with industrial activity from discharging via stormwater to the waters of the United States, Mission Trail shall implement additional appropriate structural and non-structural Best Management Practices ("BMPs") to, at a minimum, comply with the requirements of the Industrial Stormwater Permit.

2.    **Site Map**:  No later than thirty days after the Effective Date, Mission Trail shall ensure the Site Map included in the Facility SWPPP and attached hereto as <u>Exhibit 1</u> properly denotes the topography and the direction of stormwater flow for each drainage area of the Facility.  The Site Map shall also properly identify property boundaries, known or suspected drop inlets, ground type (pervious or impervious), berms and the materials they are composed of, any permanent structures and features, discharge points, sampling locations, and all other physical structures or items relevant under the Industrial Stormwater Permit and in this Consent Decree.  While the Consent Decree is in effect, if Mission Trail makes any changes to the sampling locations or discharge points at the Facility, Mission Trail shall update the SWPPP within thirty (30) days and submit the revised SWPPP to Baykeeper.

3.    **Non-Structural Best Management Practices.**  Beginning on the Effective Date, Mission Trail shall implement the following non-structural BMPs:

a. **Storm Drain Inlet/Catch Basin Best Management Practices**:

   i. <u>Storm Drain Inlet/Discharge Point Inspections</u>:  Within thirty (30) days of the Effective Date and between September 1 and October 1 of each subsequent year, Mission Trail shall inspect any storm drain inlets, catch basins, discharge points, filtration/treatment devices, and other BMPs in place at the Facility.  Mission Trail shall promptly clean, as needed, each drain inlet, catch basin, discharge point, filtration/treatment device, and other BMPs in order to remove any accumulated dust, sediment, solids, or debris.

   ii. <u>Storm Drain Inlet/Discharge Point Maintenance and Cleaning</u>:  On a weekly basis between October 1 to May 31 of each year ("Wet Season"), Mission Trail shall inspect all storm drain inlets, catch basins, discharge points, filtration/treatment devices, and other BMPs in place at the Facility to ensure that they are not in a condition that would materially impair their efficacy, and clean out accessible deposited sediment or debris.  Mission Trail shall properly dispose of any dust, sediment, debris, or other removed pollutants.

   iii. <u>Log of Storm Drain Inlet/Discharge Point Inspections, Maintenance and Cleaning</u>: Mission Trail shall prepare and maintain a log of the Storm Drain Inlet/Discharge Point Inspections, Maintenance and Cleaning described herein ("Maintenance Log").  The Maintenance Log shall indicate the staff who completed the maintenance activity and when it was completed.  The Log shall be made available for inspection by Baykeeper at any site inspection or otherwise within three (3) business days advance request by Baykeeper.

b. **Site Sweeping**:  Mission Trail shall mechanically sweep the areas in the vicinity of the Service and Maintenance Building and MRF Recycling and Transfer Building, as denoted on Exhibit 1, at least two (2) times per day during the Wet Season on each day that Mission Trail is operating, at least one (1) time per day during the remaining portion of the year ("Dry Season") on each day that Mission Trail is operating, and within 24 hours prior to a forecasted qualifying storm event, as defined by the Industrial Stormwater Permit.  Mission Trail shall mechanically sweep all other accessible paved areas at the Facility at least one (1) time per day during the Wet and Dry Seasons.  On days of mechanical sweeping, Mission Trail shall manually sweep in the vicinity of the Service and Maintenance Building and MRF Recycling Transfer Building in places that are inaccessible to the mechanical sweeper.

Mission Trail shall keep a log or checklist, as appropriate, of the on-site sweeping activity performed ("Sweeping Log"), and shall direct employees and/or contractors to accurately complete the Sweeping Log.  The Sweeping Log shall indicate the employee or contractor who conducted the sweeping, the location of the sweeping, and the dates the sweeping activities occurred.  The Sweeping Log shall be made available for inspection by Baykeeper at any site inspection or within three (3) business days of a request by Baykeeper.

c.      **Maintenance of Paved Surfaces**:  Within thirty (30) days after the Effective Date and annually thereafter, Mission Trail shall inspect and fill cracks and/or voids in existing concrete, asphalt, or other paved areas to facilitate more effective sweeping on-site.

d.      **Coverage of All Drop Inlets**:  During the Dry Season, Mission Trail shall keep all drop inlets covered to the extent feasible.

e.      **Abandoned or Inutile Equipment Storage and Removal**:  Mission Trail shall either store under cover or remove from the Facility all abandoned or broken equipment or materials no longer considered for future use that have the potential to serve as the source for pollutant loading.

f.      **Vehicle and Equipment Management**:  Mission Trail shall implement BMPs to reduce or minimize pollutant release from equipment such as forklifts, hydraulic lifts, trucks, and other heavy equipment that are parked or stored in areas of the Facility from which stormwater discharges.  Such BMPs may include relocating the vehicles offsite to better facilitate sweeping of paved areas, placing drip pans under equipment stored or parked for a week or longer, weekly inspections for evidence of leaks from such equipment, and prompt clean-up of spills, drips, or leaks from such equipment.  Any spilled substances and absorbent materials used in cleaning up spills shall be disposed of in accordance with all local, state, and federal laws and regulations.

g.      **Vehicle and Equipment Maintenance**:  Mission Trail shall not conduct routine (*i.e.*, non-emergency) vehicle or movable equipment maintenance or repair at the Facility in outdoor, uncovered areas.

h.      **Training**:  Beginning on the Effective Date, and annually thereafter, and within thirty (30) days of hiring of new employees, Mission Trail shall conduct training for all appropriate employees to explain the requirements of the Facility SWPPP to the extent applicable to such employee.  Training

shall focus on the employee's role in implementing various stormwater control measures including, for example, implementation of BMPs, sweeping, vehicle maintenance, or facility inspections.  Training shall be conducted bilingually (*i.e.,* Spanish/English or other pertinent language) to the extent that such employee is not reasonably able to comprehend training in English.  If and when appropriate, Mission Trail shall integrate any new training requirements resulting from this Consent Decree into the Facility SWPPP.  Mission Trail shall also update the SWPPP, if and when appropriate, to identify the positions responsible for carrying out stormwater management, monitoring, sampling, and SWPPP implementation.

4.    **Structural BMPs in Drainage Area 1:**  Mission Trail shall install structural BMPs in the drainage area that includes the Service and Maintenance Building and MRF Recycling Transfer Building ("Drainage Area 1"), in accordance with the following:

a.    **Hydrodynamic Separator**:  No later than 60 days after the Effective Date, Mission Trail shall fully install a hydrodynamic separator system that is equal in efficacy and size to Contech's Vortechs Model 2000 to treat the stormwater discharging from Drainage Area 1.  If Mission Trail, despite making all good faith and reasonable efforts, is unable to complete installation within 60 days of the Effective Date, Mission Trail will notify Baykeeper of the circumstances causing the delay, propose a new deadline for installation, and request an extension of the deadline.  Baykeeper shall not unreasonably deny an extension.  Notwithstanding the foregoing, the installation must be completed by October 1, 2016.

b.    During the 2015-2016 Wet Season, Mission Trail shall sample stormwater from Drainage Area 1 in accordance with Paragraph 8.  If any stormwater sample result from SL-1 during the 2015-2016 Wet Season exceeds any Target Level set forth in Exhibit 2, Mission Trail shall submit an Action Plan in accordance with Paragraphs 15-16.

c.    During the 2016-2017 Wet Season, Mission Trail shall sample stormwater from Drainage Area 1 in accordance with Paragraph 8.  If the average of the sample results of any pollutant from SL-1 during the 2016-2017 Wet Season exceeds an applicable Target Level, Mission Trail shall submit an Action Plan in accordance with Paragraphs 15-16, which shall include installation of an advanced treatment system designed to address the exceedances from Drainage Area 1, or other BMP(s) if

approved by Baykeeper, that shall be fully installed by October 1, 2017.  If the average of the sample results of any pollutant from Drainage Area 1 during the 2016-2017 Wet Season does not exceed an applicable Target Level, but any sample result individually exceeds any Target Level, Mission Trail shall submit an Action Plan in accordance with Paragraphs 15-16, in which Mission Trail shall consider installing an advanced treatment system to address the exceedance(s).

5.     **Maintenance of BMP Structural Controls**:  Beginning on the Effective Date, Mission Trail shall maintain all structural BMPs at the Facility in good operating condition and shall promptly repair any damaged or degraded structural BMPs.

6.     **Amendment of SWPPP**:  No later than thirty days after the Effective Date, Mission Trail shall amend the Facility SWPPP to incorporate the requirements and BMPs set forth in Section I of this Consent Decree and thereafter submit the updated SWPPP to Baykeeper within ten (10) business days. Baykeeper shall have thirty (30) days from receipt of the amended SWPPP to propose any changes to the SWPPP.  Within thirty (30) days of notification by Baykeeper of any proposed changes to the SWPPP, Mission Trail shall make all of Baykeeper's changes to the amended SWPPP unless Mission Trail timely requests a meet and confer in accordance with Paragraph 28 to discuss any concerns. Compliance with the SWPPP, as amended in accordance with this Paragraph provision, shall at all times be a requirement of this Consent Decree.

## II.     SAMPLING, MONITORING, INSPECTION & REPORTING

7.     **Designated Discharge Points**:  "SL-1" and "SL-2" shall be the "Designated Discharge Points" at the Facility.  Prior to installation of the hydrodynamic separator pursuant to Paragraph 4.a, SL-1, as shown on Exhibit 1, shall be the discharge point for all stormwater runoff from Drainage Area 1.  After installation of the hydrodynamic separator, Mission Trail shall move SL-1 to a point after the hydrodynamic separator that adequately reflects the stormwater discharges post-filtration.  SL-2, as shown on Exhibit 1, is the discharge point for all stormwater runoff for the area of the Facility that includes the refueling area ("Drainage Area 2").

8.     **Sampling Program for Drainage Area 1**: :

a.     Beginning with the 2015-2016 Wet Season, Mission Trail shall collect and analyze stormwater samples from SL-1 according to the following schedule:

i.      Mission Trail shall collect and analyze samples from SL-1 from the first two qualifying storm events ("QSEs) within the first half of each Wet Season during the term of this Consent Decree (October 1 to December 31).

ii.      Mission Trail shall collect and analyze samples from SL-1 from the first two qualifying storm events ("QSEs) within the second half of each Wet Season during the term of this Consent Decree (January 1 to May 31).

iii.      If Mission Trail is unable to take a sample from SL-1 during any of the first two storm events of the first half of the Wet Season or the first two QSEs of the second half of the Wet Season, Mission Trail shall continue to sample from any subsequent QSE until four samples have been collected from SL-1 in that Wet Season unless there are fewer than four QSEs in the Wet Season.

iv.      In the event that Mission Trail is unable to collect four samples from SL-1 in a Wet Season, Mission Trail shall explain in writing in the End-of-Season Summary under Paragraph 14 why it was unable to collect the required sample(s).

b.      After installation of the hydrodynamic separator pursuant to Paragraph 4.a, Mission Trail shall sample the stormwater discharges before entering the hydrodynamic separator (the influent), whenever it samples the discharges from SL-1.  These results will not be used to trigger an Action Plan pursuant to Paragraphs 4.b or 15 or to trigger installation of an advanced treatment system pursuant to Paragraph 4.c, but the results shall inform the BMPs proposed in an Action Plan or the choice of an advanced treatment system.  If Mission Trail fully installs an advanced treatment system in Drainage Area 1, Mission Trail is no longer required to sample the influent in accordance with this Paragraph.

9.  **Sampling Program for SL-2**:  During the term of this Consent Decree, Mission Trail shall collect and analyze stormwater samples from SL-2 according to the following schedule:

a.      **2015-2016 Wet Season:**  During the 2015-2016 Wet Season, Mission Trail shall collect samples from SL-2 during the first two QSEs after execution of this Consent Decree and at least once per month thereafter, for the purpose of characterizing the stormwater discharges from Drainage Area 2.  If there is no QSE in a particular month during the Wet Season, the obligation to sample is excused for that month.  In the event that Mission Trail is unable to collect four samples from SL-2 during the

2015-2016 Wet Season, Mission Trail shall explain in writing in the End-of-Season Summary under Paragraph 14 why it was unable to collect the required sample(s).

       b.    **Subsequent Wet Seasons:**  For all Wet Seasons during the term of this Consent Decree after the 2015-2016 Wet Season, Mission Trail shall sample SL-2 in accordance with the sampling program described in Paragraph 8.

10.   Each stormwater sample must be analyzed for the presence of each of the parameters listed in <u>Exhibit 2</u>.  Should industrial processes materially change at the Facility, Mission Trail shall conduct sampling for any additional parameter(s) likely to be present in the Facility's stormwater discharges in significant quantities as a result of the changed industrial processes.  Mission Trail shall notify Baykeeper of any such changes within thirty (30) days of such a change.

11.   **Qualifying Storm Event**:  Under this Consent Decree, a qualifying storm event is as defined in the Industrial Stormwater Permit, Section XI.B.

12.   **Certified Lab**:  Except for pH samples, Mission Trail shall have all stormwater samples collected pursuant to this Consent Decree delivered to a California state certified environmental laboratory for analysis within the time needed for analysis within laboratory method allowable hold times.  The laboratory shall thereafter conduct analysis sufficient to detect individual constituents at or below the Target Levels set forth in Exhibit 2.

13.   **Sample Result Reporting**:  After the Effective Date, Mission Trail shall provide results from sampling and analysis required by this Consent Decree to Baykeeper within ten (10) calendar days of receipt of the laboratory report from each sampling event.

14.   **End-of-Season Summary**:  By July 15 following each Wet Season that occurs during the Consent Decree, Mission Trail shall prepare and send to Baykeeper an End-of-Season Summary that includes (1) a summary chart with all of the sample results from the previous Wet Season including the constituent concentration(s) from Designated Discharge Point sample(s) collected at the Facility exceeding the Target Levels in Exhibit 2 ("Exceedance(s)"); and (2) identification of any new BMP(s) that Mission Trail has implemented or will implement not already discussed in a prior End-of-Season Summary or Action Plan for the immediately prior Wet Season.

15.   **Action Plan**:  If any stormwater sample result during a Wet Season exceeds any Target Level set forth in Exhibit 2, Mission Trail shall submit an Action Plan in addition to an End-of-Season Summary by July 15.

16.   **Contents of an Action Plan**:  In addition to the specific requirements described in Paragraph 4.c, an Action Plan shall include the following:

        a.      The possible sources of the Exceedance(s) during the applicable Wet Season;

        b.      A proposal for and evaluation of new site-specific BMPs designed to reduce pollutants in future stormwater discharges to the Target Levels in Exhibit 2 and/or to achieve BAT and BCT for those constituents; and

        c.      A schedule to implement any revised and/or additional BMPs by the earliest practicable time, and no later than October 1 of the next Wet Season.  In any Action Plan, Mission Trail shall consider appropriate structural BMPs as necessary to adequately address its Exceedances.

17.   **Baykeeper Review of Action Plan**:  Baykeeper shall have thirty (30) days from receipt to propose revisions to the Action Plan.  However, if Baykeeper notifies Mission Trail within thirty (30) days of receipt of the Action Plan that it is unable to provide comments within thirty (30) days, Baykeeper shall have an additional fifteen (15) days to propose revisions to the Action Plan.  Within thirty (30) days of receiving Baykeeper's proposed revisions, Mission Trail shall consider each of Baykeeper's recommended revisions to the Action Plan and accept them or timely request, in accordance with Paragraph 28, a meet and confer to discuss.

18.   **Implementation of Action Plan**:  Mission Trail shall implement the Action Plan(s) adopted pursuant to this Consent Decree as an obligation of this Consent Decree.

19.   Within thirty (30) days after BMPs set forth in an Action Plan pursuant to this Consent Decree are implemented, Mission Trail shall amend the Facility SWPPP to include all BMP revisions or additions not otherwise already implemented and included in the SWPPP.  Within thirty (30) days thereafter, Mission Trail shall provide Baykeeper with a copy of such revised SWPPP.

20.   During each Wet Season, Mission Trail has an ongoing obligation to evaluate the BMPs implemented at the Facility and, if Mission Trail has exceeded Target Levels, make attempts to reduce the concentrations to Target Levels or otherwise meet BAT or BCT, as appropriate, for the remainder of

the Wet Season. Mission Trail shall use the results from subsequent stormwater samples as they become available to assist with their ongoing evaluation of the effectiveness of BMPs.

21. **Stipulated Payments:** Mission Trail shall pay the following stipulated payments during the Term of this Consent Decree.

a. $500 for each failure to collect a sample required under this Consent Decree during the Wet Season beginning with the 2015-2016 Wet Season;

b. $100 per day after the report due date for each failure to timely submit any document, report or other communication required in this Consent Decree; and

c. $100 per day for every day past the due date that Mission Trail fails to submit any payments due under Paragraphs 24-26 of this Consent Decree.

d. $100 per day for every day past the due date that Mission Trail fails to install or implement a BMP required by this Consent Decree.

e. Any stipulated payments described above shall be paid to Baykeeper within thirty (30) days of notification of the failure to comply. Baykeeper shall forgive stipulated payments up to two (2) times, if Mission Trail corrects the failure within ten (10) days of notification of failure to comply. Mission Trail shall automatically pay to Baykeeper all stipulated payments thereafter.

22. **Site Access:** During the Term of this Consent Decree, Mission Trail shall permit representatives of Baykeeper to perform up to two (2) physical inspections per year of the Facility during operating hours ("Site Inspection"). Baykeeper shall provide Mission Trail twenty-four (24) hours' notice in advance of such Site Inspections. Baykeeper shall comply with all safety instructions provided to Baykeeper by Mission Trail staff during all Site Inspections. During Site Inspections, Baykeeper shall be allowed to inspect and sample any stormwater discharges, records, and take photos and/or videos.

23. **Reports:** During the Term of this Consent Decree, Mission Trail shall provide Baykeeper with a copy of all documents submitted to the Regional Water Board or the State Water Board concerning the Facility's compliance with the Industrial Stormwater Permit. Such documents and reports shall be transmitted to Baykeeper via electronic mail at the time the documents are submitted to the Regional Water Board or State Water Board.

### III.   MITIGATION, FEES AND COSTS

24.   **Environmental Mitigation Funding**: As mitigation for the alleged violations set forth in Baykeeper's 60-Day Notice and Complaint, within thirty (30) days of the Effective Date, Mission Trail shall pay the sum of fifteen thousand dollars ($15,000) to The Rose Foundation for Communities and the Environment, an environmental non-profit organization, for projects that will benefit the San Francisco Bay watershed. Mission Trail shall pay an additional sum of fifteen thousand dollars ($15,000) to the San Francisco Bay Bird Observatory ("SFBBO"), a non-profit organization dedicated to the conservation of birds and their habitats, for projects aimed at restoring the endangered Western Snowy Plover habitat and populations in South San Francisco Bay.  The Rose Foundation and SFBBO shall report the grant funding made with the tendered funds to the U.S. Department of Justice, and the Parties, setting forth the recipient and purpose of the funds.  Payment shall be made to The Rose Foundation for Communities and the Environment, 1970 Broadway, Suite 600, Oakland, California 94612, within thirty (30) days of the Effective Date, with notice to Baykeeper.  Payment shall be made to the San Francisco Bay Bird Observatory, 524 Valley Way, Milpitas, California 95035, within thirty (30) days of the Effective Date, with notice to Baykeeper.

25.   **Reimbursement of Fees and Costs**: Mission Trail shall reimburse Baykeeper in the amount of nineteen thousand and seventy dollars ($19,070) to help cover Baykeeper's reasonable investigation, expert, and attorneys' fees and costs, and all other reasonable costs incurred as a result of investigating the activities at the Facility related to this Consent Decree, bringing these matters to Mission Trail's attention, and negotiating a resolution of this action.  Mission Trail shall tender said payment, payable to Baykeeper, within thirty (30) days of the Effective Date.

26.   **Compliance Monitoring Funds:** Mission Trail shall provide to Baykeeper a total of twelve thousand dollars ($12,000) for costs and fees associated with monitoring Mission Trail's compliance with this Consent Decree through the termination date of this agreement.  The total compliance monitoring fund payment shall be made payable to Baykeeper within thirty (30) days after the Effective Date.

27.   **Interest on Late Payments:** Mission Trail shall pay interest on any payments, fee or costs owed to Baykeeper under this Consent Decree that Baykeeper has not received by the date due.  The

1  interest shall accrue starting the first day after the payment is due and shall be computed at 1.5% per

2  month (18% per year).

3      28.  **Dispute Resolution**: If a dispute under this Consent Decree arises, or the Parties believe that a

4  breach of this Consent Decree has occurred, the Parties shall schedule a meet and confer within ten (10)

5  business days of receiving written notification from the other Party of a request for a meeting to

6  determine whether a violation of this Consent Decree has occurred and to develop a mutually agreed

7  upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer

8  or the meet and confer does not resolve the issue, after at least seven (7) business days have passed after

9  the meet and confer occurred or should have occurred, either Party shall be entitled to all rights and

10  remedies under the law, including bringing a motion before the United States District Court for the

11  Northern District of California for the limited purpose of enforcing the terms of this Consent Decree.

12  The Parties shall be entitled to seek fees and costs incurred in any such action pursuant to the provisions

13  set forth in the Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law

14  interpreting such provisions.

15  **IV.  JURISIDCTION OVER PARTIES AND SUBJECT MATTER OF CONSENT DECREE**

16      29.  **Jurisdiction.**  For the purposes of this Consent Decree, the Parties stipulate that the United

17  States District Court of California, Northern District of California, has jurisdiction over the Parties and

18  subject matter of this Consent Decree.  The Parties stipulate that venue is appropriate in the Northern

19  District of California and that Mission Trail will not raise in the future as part of enforcement of this

20  Consent Decree whether Baykeeper has standing to bring the Complaint or any subsequent action or

21  motion pursuant to the Dispute Resolution procedures herein.  Mission Trail reserves all other rights and

22  defenses in any such proceeding.

23      30.  **Jurisdiction to Enforce Consent Decree.**  The Court referenced above shall retain jurisdiction

24  over the Parties and subject matter of this Consent Decree for the purpose of adjudicating all disputes

25  among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the

26  power to enforce this Consent Decree with all available legal and equitable remedies.

27      31.  **Submission of Consent Decree to DOJ.**  Within three (3) business days of receiving all of the

28  Parties' signatures to this Consent Decree, Baykeeper shall submit this Consent Decree to the U.S.

Department of Justice ("DOJ") and EPA for agency review consistent with 40 C.F.R. § 135.5.  The agency review period expires forty-five (45) calendar days after receipt by the DOJ, evidenced by correspondence from DOJ establishing the review period.  In the event DOJ comments negatively on the provisions of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issues raised by DOJ.

## V.   WAIVER AND RELEASES

32.   **Baykeeper Waiver and Release of Noticed Parties**:  Baykeeper, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors and assigns releases Mission Trail, its officers, directors, employees, members, parents, subsidiaries, affiliates, successors or assigns, agents, attorneys and other representatives from and waives all claims raised in the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses, or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

33.   **Mission Trail's Waiver and Release of Baykeeper**:  Mission Trail, on its own behalf and on behalf of its officers, directors, employees, members, parents, subsidiaries, affiliates, or their successors or assigns release Baykeeper and its officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns from, and waive all claims which arise from or pertain to, the 60-Day Notice and/or the Complaint, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters included in the 60-Day Notice and/or the Complaint.

## VI.   MISCELLANEOUS PROVISIONS

34.   **Effective Date**:  The Effective Date of this Consent Decree shall be the last day for the U.S. Department of Justice to provide comment on this Consent Decree, i.e., the 45th day following the U.S. Department of Justice's receipt of the Consent Decree.

35.   **Term of Consent Decree**:  This Consent Decree shall continue in effect until September 30, 2019 (the "Term"), at which time the Consent Decree, and all obligations under it, shall automatically terminate, unless one of the Parties has invoked Dispute Resolution in accordance with Paragraph 28.

36.   **Early Termination**:  If Mission Trail should cease industrial operations at the site and file a Notice of Termination ("NOT") under the Industrial Stormwater Permit prior to the termination date of this Consent Decree, Mission Trail shall send Baykeeper a copy of the proposed NOT concurrent with its submittal to the Regional Water Board.  Within ten (10) days of the Regional Water Board's approval of the NOT, Mission Trail shall notify Baykeeper in writing of the approval and remit all outstanding payments, including stipulated payments, to Baykeeper.  In the event a new successor or assign continues industrial operations at the site and assumes responsibility for implementation of this Consent Decree pursuant to Paragraph 47, Mission Trail shall notify Baykeeper within ten (10) days of the transition.

37.   **Execution in Counterparts**:  The Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

38.   **Signatures**:  The Parties' signatures to this Consent Decree transmitted by facsimile or electronic mail transmission shall be deemed binding.

39.   **Construction**:  The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.  The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

40.   **Authority to Sign**:  The undersigned are authorized to execute this Consent Decree on behalf of their respective Party and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

41.   **Integrated Consent Decree**:  All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Consent Decree are contained herein.

42.   **Severability**:  In the event that any of the provisions of this Consent Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

43.   **Choice of Law**:  This Consent Decree shall be governed by the laws of the United States or, where applicable, the laws of the State of California.

44.   **Full Settlement**:  This Consent Decree constitutes a full and final settlement of this matter.

45. **Negotiated Agreement**: The Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

46. **Modification of the Agreement**: This Consent Decree, and any provisions herein, may not be changed, waived, or discharged unless by a written instrument signed by each of the Parties.

47. **Assignment**: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns.

48. **Mailing of Documents to Baykeeper/Notices/Correspondence**: Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Baykeeper pursuant to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail addresses listed below or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or by hand delivery to the following address:

San Francisco Baykeeper
Attention: Nicole Sasaki
1736 Franklin St., Suite 800
Oakland, CA 94612
E-mail: nicole@baykeeper.org

Unless requested otherwise by Mission Trail, any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Mission Trail pursuant to this Consent Decree shall, to the extent feasible, be provided by electronic mail transmission to the e-mail addresses listed below, or, if electronic mail transmission is not feasible, by certified U.S. Mail with return receipt, or by hand delivery to the addresses below:

Mission Trail Waste System, Inc.
Attention: Yvette Sessions
1060 Richard Ave.
Santa Clara, CA 95050
Email: ysessions@missiontrail.com

Jillian Hogan
Alameda County Industries
610 Aladdin Ave.
San Leandro, CA 94577
Email: jhogan@alamedacountyindustries.com

With a copy to:

> Michael Brady
> Brady & Vinding
> 400 Capitol Mall, Suite 2640
> Sacramento, CA 95814
> Email: mbrady@bradyvinding.com

Notifications of communications shall be deemed submitted on the date that they are emailed, or postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any changes of address or addressees shall be communicated in the manner described above for giving notices.

49. **Impossibility of Performance**: No Party shall be considered to be in default in the performance of any of its obligations under this Consent Decree when performance becomes impossible due to circumstances beyond the Party's control, including without limitation any act of God, act of war or terrorism, fire, earthquake, and flood. "Circumstances beyond the Party's control" shall not include normal inclement weather, economic hardship, or inability to pay. Any Party seeking to rely upon this Paragraph shall have the burden of establishing that it could not reasonably have been expected to avoid, and which by exercise of due diligence has been unable to overcome, the impossibility of performance.

1    The settling Parties hereto enter into this Consent Decree, Order and Final Judgment and submit

2    it to the Court for its approval and entry as a final judgment.

3

4    SAN FRANCISCO BAYKEEPER

5    Date: January 11, 2016

6

7    _____

8    Erica A. Maharg
     Staff Attorney, San Francisco Baykeeper

9

10

11   MISSION TRAIL WASTE SYSTEMS, INC.

12   Date:  1-14-2016

13

14   _____
     By:
15   Title:

16

17

18   APPROVED AND SO ORDERED, this _8th_ day of __March, 2016_____.

19

20   UNITED STATES DISTRICT JUDGE

21

22   _____
     Honorable Nathanael M. Cousins
23

24

25

26

27

28

CONSENT DECREE                    18                    Case No. 5:15-cv-3465

EXHIBIT 1







## GENERAL SITE FEATURES:

APPROXIMATE FACILITY BOUNDARY FOR PURPOSES OF THE SWPPP (EXTENT OF INDUSTRIAL ACTIVITY)

### STORM WATER MONITORING AND SAMPLING LOCATIONS:

SL-1 FACILITY-STORM WATER SAMPLE LOCATION

ML-1 STORM WATER MONITORING LOCATION

### STORM WATER FLOW, CONVEYANCE AND DISCHARGE FEATURES:

STORM WATER, SURFACE DRAINAGE/ SHEET FLOW PATTERN

DI STORM WATER DROP INLET

POTENTIAL RUN-ON

STORM WATER CONVEYANCE SYSTEM

SURFACE SWALE/SURFACE DRAINAGE

SUB-SURFACE DRAINAGE

## AREAS AND DESCRIPTION

### AREA A - MRF RECYCLING AND TRANSFER BUILDING

- A1 SSI COMPACTOR
- A2 INCLINED FEED CONVEYOR
- A3 SORT PLATFORM
- A4 WOOD BIN
- A5 RESIDUAL LOAD-OUT
- A6 PRENTICE 210D GRAPPLER
- A7 MIXED RECYCLING LOAD-OUT
- A8 CLEAN WOOD WASTE STORAGE
- A9 GREEN WASTE STORAGE
- A10 PUSH WALL (TYP)
- A11 C&D STORAGE
- A12 DIRT AND CONCRETE STORAGE
- A13 CRT STORAGE
- A14 OFFICE
- A15 WOOD WASTE BIN
- A16 RESTROOMS
- A17 SUMP

### AREA B - SERVICE AND MAINTENANCE BUILDING

- B1 PAINT BOOTH
- B2 PARTS ROOM
- B3 OFFICE
- B4 BREAK ROOM
- B5 WELDING SHOP
- B6 ELECTRICAL ROOM/HIGH VOLTAGE
- B7

### AREA C - WASH RACK AND HAZARDOUS MATERIALS STORAGE AREA

- C1 PARTS/SOLVENTS
- C2 WASTE ANTIFREEZE
- C3 PARTS WASHER
- C4 BULK OIL STORAGE-400-GAL
- C5 BULK OIL STORAGE-180-GAL

### AREA C - (cont'd)

- C6 BULK OIL STORAGE-220-GAL.
- C7 WASTE OIL STORAGE-1,000-GAL.
- C8 55-GAL. DRUMS, ON SPILL PAL
- C9 FUEL PUMP #1-RED DIESEL
- C10 FUEL PUMP #2-DIESEL

### AREA D - CNG STATION, FUELING DISPENSERS AND TRUCK PARKING

- D1 CNG STATION
- D2 CNG "FAST FILL" DISPENSERS
- D3 CNG VEHICLE LANE
- D4 MISC. STORAGE
- D5 TRUCK PARKING
- D6 MISC. COVERED STORAGE
- D7 CNG "TIME FILL" FUELING STALL

### AREA E - SCALE HOUSE AND INTERNAL ROAD AREAS

- E1 SCALE HOUSE
- E2 WEST SCALES
- E3 VEHICLE PARKING
- E4 MISC. STORAGE
- E5 EAST SCALE
- E6 USED BATTERY SHED
- E7 RECYCLED OIL/FILTER SHED
- E8 UDDED BINS

### AREA F - BIN AND MATERIAL STORAGE AREAS

- F1 UDDED STORAGE/REC. BINS
- F2 MISC. STORAGE

### AREA G - FOOD-SCRAP AND WASTE RECYCLING/REUSE AREA

- G1 FOOD SCRAP INTAKE AREA
- G2 TEMPORARY TRAILER, FOOD WASTE
- G3 PROCESSING

FACILITY SWPPP MAP: AREAS OF INDUSTRIAL ACTIVITY

PROJECT TITLE: MISSION TRAILS WASTE SYSTEMS, 1313 MENDREX DRIVE, SANTA CLARA, CALIFORNIA

SCS ENGINEERS — ENVIRONMENTAL CONSULTANTS

SCALE: AS SHOWN

DRAWING NO. 3

## GENERAL SITE FEATURES:

APPROXIMATE FACILITY BOUNDARY FOR PURPOSES OF THE SWPPP (EXTENT OF INDUSTRIAL ACTIVITY)

### STORM WATER MONITORING AND SAMPLING LOCATIONS:

SL-2 FACILITY-STORM WATER SAMPLE LOCATION

ML-1 STORM WATER MONITORING LOCATION

### STORM WATER FLOW, CONVEYANCE AND DISCHARGE FEATURES:

STORM WATER, SURFACE DRAINAGE/SHEET FLOW PATTERN

STORM WATER DROP INLET

ROOF DRAIN

STORM WATER CONVEYANCE SYSTEM

SUB-SURFACE DRAINAGE AND DIRECTION OF FLOW

### FACILITY-WIDE INDUSTRIAL ACTIVITIES:

| | |
|---|---|
| SA, ST, AST | STORAGE AREAS, STORAGE TANKS; ABOVE-GROUND STORAGE TANK (AST) |
| SHIPRE | SHIPPING & RECIEVING AREAS |
| VE-SA | VEHICLE AND/OR EQUIPMENT STORAGE AREA |
| VE-MA | VEHICLE AND/OR EQUIPMENT MAINTENANCE AREA |
| VRS-PA | VEHICLE/ROLLING STOCK PARKING AREA |
| FA | FUELING AREA |
| MHPSA | MATERIAL HANDLING AND/OR PROCESSING/STORAGE AREA |
| WT/DA | WASTE TREATMENT AND/OR DISPOSAL AREA |
| DPGA | DUST AND/OR PARTICULATE GENERATING AREA |
| CMRA | CLEANING AND/OR MATERIAL REUSE AREA |
| | **ADDITIONAL FACILITY SPECIFIC AREAS** |
| HAZ-MAT | HAZARDOUS MATERIALS STORAGE |

### FACILITY BMPs

AT A MINIMUM, BMPs IMPLEMENTED FACILITY-WIDE: (SEE SWPPP FOR FURTHER DETAILS)

- GOOD HOUSEKEEPING
- PREVENTATIVE MAINTENANCE
- SPILL AND LEAK PREVENTION AND RESPONSE
- MATERIAL HANDLING AND WASTE MANAGEMENT
- EROSION AND SEDIMENT CONTROLS
- EMPLOYEE TRAINING PROGRAM
- QUALITY ASSURANCE/RECORD KEEPING

ADDITIONAL BMPs IMPLEMENTED FACILITY-WIDE:

FACILITY SOURCE CONTROL BMPs

NON-STORM WATER MANAGEMENT BMPs

| | |
|---|---|
| SC-10 | NON-STORM WATER DISCHARGES |
| SC-11 | SPILL PREVENTION, CONTROL AND CLEANUP |

VEHICLE/EQUIPMENT MANAGEMENT BMPs

| | |
|---|---|
| SC-20 | VEHICLE AND EQUIPMENT FUELING |
| SC-21 | VEHICLE AND EQUIPMENT CLEANING |
| SC-22 | VEHICLE AND EQUIPMENT REPAIR |

| | |
|---|---|
| SE-10 | DRAIN INLET PROTECTION |
| | DRAIN INLET PROTECTION |

FILTREXX SILTSOXX SEDIMENT CONTROL
FILTREXX DIMROSOXX METALOXX PETROLOXX
USED IN TANDEM FOR DRAIN INLET PROTECTION

MATERIAL AND WASTE MANAGEMENT BMPs

| | |
|---|---|
| SC-30 | OUTDOOR LOADING/UNLOADING |
| SC-31 | OUTDOOR LIQUID CONTAINER STORAGE |
| SC-32 | OUTDOOR EQUIPMENT OPERATIONS |
| SC-33 | OUTDOOR STORAGE OF RAW MATERIALS |
| SC-34 | WASTE HANDLING AND DISPOSAL |
| SC-35 | SAFER ALTERNATIVE PRODUCTS |
| SC-41 | BUILDING AND GROUNDS MAINTENANCE |
| SC-43 | PARKING/STORAGE AREA MAINTENANCE |
| SC-44 | DRAINAGE SYSTEM MAINTENANCE |

STORM WATER DROP INLET WITH FILTREXX BMP

SWEEPING (SEE SWPPP SEC. 3.1.1 FOR FURTHER DETAILS)

- ENHANCED MECHANICAL SWEEPING IN AND AROUND THE SERVICE AND MAINTENANCE BUILDING AND MRF RECYCLING BUILDING:
  - AT A MINIMUM, TWICE DAILY DURING WET SEASON (OCT-MAY)
  - AT A MINIMUM, ONCE DAILY DURING WET SEASON (JUNE - SEPT)
  - WITHIN 24 HOURS PRIOR OF FORECASTED QSE (50% CHANCE OF .1" OR MORE)

SHEET TITLE: FACILITY SWPPP MAP: AREAS OF INDUSTRIAL ACTIVITIES AND FACILITY BMPs

PROJECT TITLE: MISSION TRAILS WASTE SYSTEMS, 1313 MENDIES DRIVE, SANTA CLARA, CALIFORNIA

WDID: 243I013448 1313 MENDIES DRIVE SANTA CLARA, CALIFORNIA

MISSION TRAIL

SCS ENGINEERS ENVIRONMENTAL CONSULTANTS, 3843 BROCKWAY BOULEVARD, SUITE 205, SANTA ROSA, CALIFORNIA

PROJ. NO. 01215342.00 16

DATE: 05/20/15

SCALE: AS SHOWN

FIGURE 4

# EXHIBIT 2

# EXHIBIT 2

### Target Levels for Stormwater Sampling

| Constituent | Target Levels | Source |
|---|---|---|
| **pH** | 6.5 – 8.5 SU | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Suspended Solids** | 100 mg/L | *Multi-Sector General Permit 2008 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Oil and Grease** | 15 mg/L | *Multi-Sector General Permit 2000 benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Chemical Oxygen Demand** | 120 mg/L | *Multi-Sector General Permit 2015 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Total Aluminum** | 0.75 mg/L | *Multi-Sector General Permit 2015 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Dissolved Copper** | 0.0094 mg/L | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Copper** | 0.0332 mg/L | *California Industrial General Permit 2014-0057-DWQ* |
| **Total Iron** | 1.0 mg/L | *Multi-Sector General Permit 2013 Sector-specific benchmark; California Industrial General Permit 2014-0057-DWQ* |
| **Dissolved Zinc** | 0.09 mg/L | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Zinc** | 0.26 mg/L | *California Industrial General Permit 2014-0057-DWQ* |
| **Dissolved Lead** | 0.065 mg/L | *San Francisco Bay Basin Plan Water Quality Objective* |
| **Total Lead** | 0.262 mg/L | *California Industrial General Permit 2014-0057-DWQ* |